IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re: <br><br> **HELLBENDER BREWING COMPANY LLC,** <br><br> Debtor. | Case No. 16-00577 <br><br> (Chapter 11) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 361 AND 363 AND BANKRUPTCY RULES 2002 AND 4001 (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL, AND (II) AUTHORIZING DEBTOR TO PROVIDE ADEQUATE PROTECTION**

Hellbender Brewing Company LLC, the debtor and debtor-in-possession herein (the "Debtor"), by counsel, hereby moves (the "Motion") for entry of an order (the "Cash Collateral Order"),[1] substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a), 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtor to use Cash Collateral (as defined herein) and (ii) authorizing adequate protection to EagleBank, in the form described herein. In support of this Motion, the Debtor states as follows:

**Rule 4001(b) Statement**

In connection with the Motion, and in accordance with Bankruptcy Rule 4001(b), the following is a summary of the material provisions of this Motion. This summary is qualified in its entirety by the Motion:

<u>Entities with a Potential Interest in Cash Collateral</u>:

---

1. Any capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Order.

1.EagleBank.

Purposes for the Use of the Cash Collateral

The Debtor intends to use Cash Collateral to pay vendors, pay employees, pay operating expenses, pay amounts authorized by the Court, pay costs of administration of this bankruptcy case, and continue the Debtor's restructuring efforts.

Material Terms, Including Duration, of the Use of the Cash Collateral

The Debtor requests use of Cash Collateral to preserve the value of the Debtor's estate for the benefit of all of the Debtor's creditors, including EagleBank.  Cash Collateral will be used in accordance with the budget attached as Exhibit B hereto (the "Budget"), subject to allowed variances (as discussed below).

Adequate Protection Provided to Prepetition Secured Party

As adequate protection, EagleBank shall receive a valid and perfected replacement lien on the Collateral (as defined herein) to secure the amount of any Collateral Diminution (as defined herein), subject and subordinate only to valid, perfected and enforceable prepetition liens

**Jurisdiction**

1.This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.The relief sought in this Motion is based upon sections 105(a), 361 and 363 of the Bankruptcy Code and Rule 2002 and 4001of the Bankruptcy Rules.

**Background**

3.On November 1, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating this chapter 11 case (the

"Chapter 11 Case"). The Debtor continues to operate its businesses as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no official committee of creditors has been appointed in the Chapter 11 Case.

4. The Debtor is a Delaware limited liability company organized in 2012 for the purpose of constructing and operating a microbrewery to produce malt beverages for sale in the District of Columbia and neighboring areas within the Washington, D.C. metropolitan region. In 2014, with funding from shareholder capital contributions and an SBA-backed loan from EagleBank, the Debtor constructed a state-of-the-art microbrewery in a northeast D.C. warehouse. At the microbrewery, the Debtor both produces its hand-crafted beers and sells them in its tasting room to patrons of the microbrewery. In addition to the onsite sales, the Debtor's products are distributed to restaurants and bars in Montgomery County, Maryland and in Northern Virginia, both inside the Capital Beltway and in Loudoun and Fauquier Counties.

5. On March 27, 2014, the Debtor entered into a Loan Agreement with EagleBank (the "Loan Agreement") pursuant to which EagleBank made a loan to the Debtor in the amount of $1,150,000 under Section 7(a) of the Small Business Act, as amended (the "SBA Loan"). The Debtor executed a Note dated March 27, 2014 (the "Note") in accordance with the Loan Agreement , which Note was secured by a Security Agreement – Commercial of even date (the "Security Agreement"). In addition, Unconditional Guarantees were executed by Bejamin D. Evans and Patrick R. Mullane, the Debtor's two managing members (collectively, the "Guarantees" and, together with the Loan Agreement, the Note, and the Security Agreement, the "Loan Documents"). Pursuant to the Security Agreement, the Debtor pledged all of its assets to EagleBank as collateral for the Note.

6. The proceeds of the SBA Loan were used by the Debtor to construct its brewery in Washington, D.C. and to commence and fund operations for the production and sale of beer. During the first two years of operations, the Debtor operated at a loss, due principally to sub-par performance by Hop & Wine Beverage, LLC ("H&W"), the Debtor's exclusive distributor in Virginia and the District of Columbia, and to onerous charges imposed by H&W. As a result, the Debtor did not have sufficient available cash to meet it rent obligations to its landlord or to stay current with the amortization payments due EagleBank under the terms of the Note. In early August, 2016, the Debtor met with representatives of EagleBank and the Small Business Administration in an effort to resolve the Debtor's cash flow problems. As a result of this meeting, the Debtor was granted a six-month grace period during which time it would be allowed to make interest-only payments under the Note, rather than the amortized payments of both principal and interest that were otherwise due. While this partially alleviated the Debtor's cash flow problems, it did not address the Debtor's obligations to other trade creditors and to its landlord, nor did it resolve the fundamental cash flow problems caused by the Debtor's exclusive distribution agreement with H&W. Ultimately, the Debtor had no choice but to file for bankruptcy protection in order to preserve and maximize the value of its assets, as well as to ensure that both secured and unsecured creditors are protected.

**Relief Requested**

10. With this Motion, the Debtor seeks approval of the use of Cash Collateral to provide it with the liquidity necessary to continue to operate its business and perform its contracts during the Chapter 11 Case. With access to this liquidity, the Debtor will have the ability to preserve and maximize the value of its assets for the benefit of its creditors. The Debtor meets the Bankruptcy Code's standards for approval of the Cash Collateral Order and

will provide EagleBank with adequate protection of its interest in the Cash Collateral. Accordingly, the Motion should be granted.

## Summary of Loan Obligations

11. The Debtor is indebted to EagleBank, in the original principal amount of $1,150,000. As of the Petition Date, the principal balance on the Note was $1,035,792.91. EagleBank alleges that as of the Petition Date, it is entitled to the payment of interest, fees and expenses such that the total payoff amount under the Note is $1,057,560.35.

12. In connection with the Loan Agreement, EagleBank holds a senior lien on all assets of the Debtor and all proceeds and products thereof (the Collateral, as that term is defined in the Note and Security Agreement, being hereinafter referred to as the "EagleBank Collateral"). The lien covers the sales proceeds of the Debtor's inventory, which would qualify as cash collateral ("Cash Collateral") under section 363(a) of the Bankruptcy Code. The lien of EagleBank on the EagleBank Collateral (the "Prepetition EagleBank Lien") is senior and superior in right to any other liens and security interests in the EagleBank Collateral.

## Use of Cash Collateral

**A.     Debtor's Liquidity Needs**

13. In determining the amount of liquidity needed, the Debtor has analyzed its near-term projected financial performance, including the cost it expects to incur running its business operations and preserving its business assets, while fulfilling its obligations as a debtor-in-possession in these chapter 11 proceedings.

14. To assess its immediate funding needs, the Debtor has developed a cash flow forecast, taking into account anticipated cash receipts and disbursements. The Debtor has

analyzed the impact of the bankruptcy filing and has identified potential cash outlays that would enable it to continue its ongoing operations.

15. The Debtor has determined that its immediate liquidity needs can be met by permitting the Debtor to use the Cash Collateral. Therefore, by this Motion, the Debtor requests use of Cash Collateral to preserve the value of the Debtor's estate for the benefit of all of the Debtor's creditors, including, but not limited to, EagleBank.

**B.     Requested Use of Cash Collateral**

16. The Debtor seeks entry of the Cash Collateral Order authorizing it to use Cash Collateral for the purposes and in the amounts set forth in the Budget, provided that the Debtor may exceed the expenditures in the Budget so long as it does not make payments that result in an adverse variance on a cumulative basis commencing with the Petition Date, in each case of more than 10% of the aggregate amounts set forth in the Budget for such respective period. To the extent the Debtor makes aggregate cash payments of a lesser amount than the aggregate expense amounts (consisting of both budgeted cash disbursements and budgeted expense accruals) stated in the Budget during any given month, such lesser amount shall be carried forward to the next month and may be disbursed by the Debtor at a future date.

17. The Debtor may also vary from the Budget with the prior written consent of EagleBank or by further Order of the Court.

18. The Debtor has discussed its Budget with representatives of EagleBank and has obtained EagleBank's consent to use Cash Collateral consistent with the request set forth in this Motion.

19. Section 363(c)(2) of the Bankruptcy Code, which governs the ability of a debtor to use cash collateral, provides in relevant part that:

The [debtor] may not use, sell, or lease cash collateral . . . unless—

7. each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

20. As indicated in the Budget, the Debtor proposes to use Cash Collateral to fund the ongoing restructuring efforts, including, without limitation, paying post-petition vendors, paying employees, paying professionals, paying amounts approved by the Court, and otherwise preserving the value of its business. Use of Cash Collateral in this fashion will preserve value for all of the Debtor's creditors.

C. **Debtors' Proposed Adequate Protection**

21. Section 363(e) of the Bankruptcy Code provides that, upon request of a party with an interest in property of the estate, the Court may prohibit or condition the use, sale, or lease of property in which another entity has an interest "as necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). While the Bankruptcy Code does not define "adequate protection," section 361 of the Bankruptcy Code provides certain examples: (a) periodic cash payments, (b) additional or replacement liens, or (c) other relief resulting in the "indubitable equivalent" of such entity's interest in the collateral. 11 U.S.C. § 361. Thus, under section 363(e), a secured creditor is entitled, upon request, to adequate protection "as necessary" to preserve the value of its interest in property, but not more.

22. A determination of what constitutes "adequate protection" must be undertaken on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). As the Fourth Circuit has noted, "[t]he concept of adequate protection is an amorphous one, but,

in essence, it means that the value of a creditor's interest in the property securing the debt owed to him may not be diminished." *Ford Motor Credit Co. v. JKJ Chevrolet (In re JKJ Chevrolet)*, 1997 U.S. App. LEXIS 18180, *6 (4th Cir. July 21, 1997); *see also United Sav. Assoc. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370 (1988) (secured creditor entitled to adequate protection against diminution in value of its interest in property); *495 Cent. Park*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992)("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the chapter 11 reorganization."); *Beker*, 58 B.R. at 736.

23.  As the secured lender with a lien on all of the Debtor's assets, EagleBank has an interest in the Cash Collateral. EagleBank is entitled, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, to adequate protection for any diminution in the value of its interest in the EagleBank Collateral, including the Cash Collateral ("Collateral Diminution"). Debtor requests that, as adequate protection to EagleBank of its interest in the EagleBank Collateral, including the Cash Collateral, EagleBank be granted a valid and perfected security interest and replacement lien pursuant to sections 361(2) and 552(a) and (b) of the Bankruptcy Code in all categories and items of EagleBank Collateral described in the Security Agreement, excluding causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof (collectively, the "Replacement EagleBank Collateral") to secure any Collateral Diminution to the same extent, and in the same priority, as the Prepetition EagleBank Lien (the "EagleBank Adequate Protection Lien").

**D.   The Proposed Adequate Protection is Sufficient**

24.  The Debtor submits that the EagleBank Adequate Protection Lien preserves the value of EagleBank's interest in the Prepetition Collateral, including the Cash Collateral, and thus adequately protects its interest therein.

25. Given that the Debtor's use of Cash Collateral in accordance with the Budget will fund the Debtor's ongoing operations, the Cash Collateral expended by the Debtor should yield additional revenues. Many cases find that so long as the debtor operates at a break-even point, the value of a secured creditor's interest is not diminishing. *See In re Dynaco Corp.*, 162 B.R. 389, 395 (Bankr. D.N.H. 1993) (finding adequate protection where post-petition inventory and collateral levels would remain generally steady over time, even though certain short-term or cyclical dips would occur, as collateral subject to a floating lien is replenished as the debtor's operations continue); *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. D. Mass. 1988) ("Because the proceeds of accounts receivable are being used in a business which is operating at an approximate break-even point, it follows that the stream of cash collateral will likely remain at an approximate even level over a sustained period, with new proceeds replacing old. The constant nature of this stream give the [secured lender] protection for its cash collateral."); *In re Pursuant Athletic Footwear, Inc.*, 193 B.R. 713, 716-17 (Bankr. D. Del. 1996) (finding adequate protection and authorizing use of cash collateral where, although debtor had not operated profitably prepetition, there was no post-petition diminution in the value of the lender's collateral); *see also* 3 COLLIER ON BANKRUPTCY ¶ 361.03[3][a] ("The grant of additional or replacement liens may be particularly appropriate when the affected creditor hold a "floating lien" on after-acquired property, such as inventory or accounts."). In the current case, under the Budget, the Debtor's business operations initially will continue to generate negative cash flow. However, the Debtor intends to implement a new plan for beer distribution to increase its sales revenue and to commence canning operations to increase sales inventory, thereby generating positive cash flow within a foreseeable period. This increased revenue adequately protects the value of EagleBank's interest in the Cash Collateral.

26. Moreover, the Debtor is prepared to make monthly payments in cash of post-petition non-default interest to EagleBank to the same extent as was provided pursuant to the prepetition agreement worked out by the Debtor, EagleBank and the SBA.

27. Because the overall value of EagleBank's interest in the Cash Collateral is not diminishing and the Debtor will be providing EagleBank with the Adequate Protection described herein, EagleBank is not entitled to any further adequate protection under the Bankruptcy Code. *See* 11 U.S.C. § 363(e) (requiring adequate protection only "as necessary" to protect the secured creditor's interest in property).

28. The Debtor proposes that the Adequate Protection described herein be subject to: (a) the payment of allowed fees and expenses incurred by professionals retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code by the Debtor, subject to Court approval; (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6); and (c) any fees payable to the Clerk of the Bankruptcy Court. The Debtor requests that the Court order that so long as the Debtor remains entitled to use Cash Collateral, the Debtor shall be permitted to pay all compensation and reimbursement allowed and payable under sections 330 and 331 of the Bankruptcy Code, and orders of this Court, as well as all court fees and U.S. Trustee fees.

29. Based upon the foregoing, the Debtor respectfully requests that the Court grant the Motion in accordance with the terms set forth in the proposed Order.

**<u>Waiver of Memorandum of Law</u>**

30. The Debtor respectfully requests that this Court treat this Motion as a written memorandum of points and authorities consistent with Local Bankruptcy Rule 9013-1(b)(2).

**Notice**

31.     No trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case.  The Debtor has served notice of this Motion on the following parties and their counsel, if known: (a) the Office of the U.S. Trustee, (b) the Debtor's secured creditors, (c) those creditors holding the twenty largest unsecured claims against the Debtor's estate, (d) all taxing authorities, (e) the Securities and Exchange Commission and (f) all parties requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 1, 2016                    Respectfully submitted,

                                           */s/ Lawrence A. Katz*
                                           Lawrence A. Katz (D.C. Bar No. 252825)
                                           HIRSCHLER FLEISCHER
                                           8270 Greensboro Drive, Suite 700
                                           Tysons, VA 22102
                                           Email: lkatz@HF-law.com
                                           Telephone (703) 584-8362
                                           Facsimile (703) 584-8901

                                           *Proposed Counsel to the Debtor*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of November, 2016, a copy of the foregoing Debtor's Motion for Entry of an Order Pursuant to Bankruptcy Code Sections 105(A), 361 and 363 and Bankruptcy Rules 2002 and 4001 (I) Authorizing Debtor to Use Cash Collateral, and (II) Authorizing Debtor to Provide Adequate Protection, and a proposed form of Order thereon, was served by first class mail, postage pre-paid, on:

| | | |
|---|---|---|
| **Anderson Tax**<br>1861 International Drive, Suite 501<br>McLean, VA 22102 | **ARC Water Treatment**<br>10620 Riggs Hill Road, Suite J<br>Jessup, MD 20794 | **Ben Evans**<br>718 Park Road, NW, Apt. #8<br>Washington, DC 20010 |
| **Corporate Thread**<br>2929 Highway Avenue<br>Highland, IN 46322 | **Country Malt Group – North Country**<br>16 Beeman Way<br>Champlain, NY 12919 | **DC Office of Tax and Revenue**<br>1101 4th Street, SW, Suite 270W<br>Washington, DC 20024 |
| **Direct TV Inc.**<br>308 S. Akard Street, Room 1110<br>Dallas, TX 75202 | **Eagle Bank**<br>7830 Old Georgetown Road<br>Attn: Melissa Fischer<br>Bethesda, MD 20814 | **Eagle Bank Credit Card**<br>PO Box 108<br>St. Louis, MO 63166-0108 |
| **Federal Tax & Trade Bureau Beer Excise**<br>PO Box 790353<br>St. Louis, MO 63179-0353 | **Home Depot Credit Services**<br>PO Box 9001030<br>Louisville, KY 40290-1030 | **Hop & Wine Beverages LLC**<br>22714 Glenn Drive, Suite 130<br>Sterling, VA 20164 |
| **Keg Credit LLC**<br>308 E. Renfro Street, Suite 211<br>Burleson, TX 76028 | **Patrick Mullane**<br>230 Aspen Street<br>Alexandria, VA 22305 | **PEPCO**<br>PO Box 13608<br>Philadelphia, PA 19101 |
| **RCN Telecom Services LLC**<br>PO Box 11816<br>Newark, NJ 07101-8116 | **Roberts Oxygen Company Inc.**<br>15830 Redland Road<br>Derwood, MD 20855 | **Secure 24**<br>1125 Mainsail Drive<br>Annapolis, MD 21403 |

- 13 -

**Swipely Inc.**
**10 Dorrance Street**
**Providence, RI  02903**

**Upserve Inc.**
**10 Dorrance Street**
**Providence, RI  02903**

**Vanguard Realty Group**
**1390 Piccard Drive, Suite 120**
**Rockville, MD  20850**

**Washington Gas**
**1100 H Street, NW**
**Washington, DC  20005**

**Joseph A. Guzinski, Trustee**
**Office of the US Trustee**
**115 S. Union Street, Suite 210**
**Alexandria, VA  22314**

*/s/ Lawrence A. Katz*
Lawrence A. Katz

8193424-4  041587.00001

- 13 -