# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| In re:<br><br>**HELLBENDER BREWING COMPANY LLC**,<br><br>    Debtor. | )<br>)<br>)   Case No. 16-00577<br>)<br>)   (Chapter 11)<br>)<br>) |

## DECLARATION OF PATRICK MULLANE IN SUPPORT OF THE DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS

Patrick Mullane declares and says:

1. I am a Managing Member and the Vice President of Hellbender Brewing Company LLC (the "Debtor").

2. I am familiar with the day-to-day operations, businesses and financial affairs of the Debtor.

3. I submit this declaration (this "Declaration") (i) in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) pursuant to 28 U.S.C. 1746 in support of the Debtor's petition and contemporaneously-filed requests for relief in the form of motions (the "First Day Motions") and (iii) to assist the Court and other interested parties in understanding the circumstances giving rise to the commencement of this chapter 11 case. I have reviewed the First Day Motions or have otherwise had their contents explained to me, and it is my belief that the relief sought therein is essential to the uninterrupted operation of the Debtor's business and to the Debtor's reorganization.

4. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by

employees working under my supervision, or my opinion based upon experience, knowledge and information concerning the operations of the Debtor and the brewery industry as a whole. If called upon to testify, I would testify competently to the facts set forth in this declaration. Unless otherwise indicated, the financial information contained herein is unaudited.

**I.      Background**

5.      On November 1, 2016 (the "Petition Date"), the Debtor, as debtor and debtor in possession in the above-captioned chapter 11 case, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtor intend to continue in the possession of its property and the management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      The Debtor is a Delaware limited liability company organized in 2012 for the purpose of constructing and operating a microbrewery to produce malt beverages for sale in the District of Columbia and neighboring areas within the Washington, D.C. metropolitan region.

8.      In 2014, with funding from shareholder capital contributions and an SBA-backed loan from EagleBank, the Debtor constructed a state-of-the-art microbrewery in a warehouse located at 5788 2nd Street, N.E., Washington, D.C. 20011 (the "Premises").

9.      Located on the Premises in addition to the microbrewery where the Debtor produces its hand-crafted beers is a tasting room where beer is sold directly to patrons.

10.     In addition to the onsite sales, the Debtor's products are distributed to restaurants and bars in Montgomery County, Maryland and in Northern Virginia, both inside the Capital Beltway and in Loudoun and Fauquier Counties.

### A. Secured Debt Obligations

11. On March 27, 2014, the Debtor entered into a Loan Agreement with EagleBank (the "Loan Agreement") pursuant to which EagleBank made a loan to the Debtor in the amount of $1,150,000 under Section 7(a) of the Small Business Act, as amended (the "SBA Loan").

12. The Debtor executed a Note dated March 27, 2014 (the "Note") in accordance with the Loan Agreement, which Note was secured by a Security Agreement – Commercial of even date (the "Security Agreement").

13. In addition, Unconditional Guarantees were executed by Bejamin D. Evans and Patrick R. Mullane, the Debtor's two managing members (collectively, the "Guarantees" and, together with the Loan Agreement, the Note, and the Security Agreement, the "Loan Documents").

14. Pursuant to the Security Agreement, the Debtor pledged all of its assets to EagleBank as collateral for the Note.

15. The proceeds of the SBA Loan were used by the Debtor to construct its brewery on its Premises in Washington, D.C. and to commence and fund operations for the production and sale of beer.

### B. Lease Obligations

16. The Debtor and Industrial Investors Limited Partnership entered an unexpired lease of nonresidential real property regarding the Premises (the "Lease") on February 14, 2013.

17. The initial term of the Lease was for five years, commencing on June 1, 2013 and expiring on May 31, 2018.

18.   The Debtor has the option of renewing the Lease for two additional five-year terms provided it is not in default under the Lease.

19.   Prior to the commencement of the Chapter 11 Case, the Debtor was in arrears on the payment of rent due under the Lease.

### C.   *Distributor Obligations*

20.   Hop & Wine Beverages, LLC ("H&W") is in the business of distributing alcoholic beverages, including beer, throughout the mid-Atlantic region.

21.   On September 16, 2013, the Debtor entered into the Distribution Agreement with H&W, pursuant to which H&W agreed to serve as the exclusive distributor of the Debtor's malt beverages within the District of Columbia. H&W also serves as the Debtor's exclusive distributor in certain portions of Virginia.

## II.   *Events Leading to Bankruptcy and Pre-Petition Date Restructuring Efforts*

22.   During the first two years of operations, the Debtor operated at a loss, due principally to sub-par performance by H&W and to onerous charges imposed by H&W.

23.   As a result, the Debtor did not have sufficient available cash to meet it rent obligations to the Landlord or to stay current with the amortization payments due EagleBank under the terms of the Note.

24.   In early August, 2016, the Debtor met with representatives of EagleBank and the Small Business Administration in an effort to resolve the Debtor's cash flow problems.

25.   As a result of this meeting, the Debtor was granted a six-month grace period during which time it would be allowed to make interest-only payments under the Note, rather than the amortized payments of both principal and interest that were otherwise due.

26. While this partially alleviated the Debtor's cash flow problems, it did not address the Debtor's obligations to other trade creditors and to the Landlord, nor did it resolve the fundamental cash flow problems caused by the Debtor's exclusive distribution agreement with H&W. Ultimately, the Debtor had no choice but to file for bankruptcy protection in order to preserve and maximize the value of its assets, as well as to ensure that both secured and unsecured creditors are protected.

27. The Debtor attempted to negotiate with H&W to either increase sales volume or to terminate the contract between the Debtor and H&W. These negotiations were ultimately unsuccessful.

28. The Debtor has successfully negotiated the terms of a Plan with the Landlord and Eagle Bank, but requires bankruptcy protection in order to resolve the burdensome exclusive distribution agreement with H&W.

29. The Debtor has determined, in the prudent exercise of its business judgment, that the commencement of this chapter 11 case at this time is the best alternative in order to stabilize its business, and ensure that maximum value can be preserved and realized for the benefit of its estate.

30. While the Debtor is cognizant of the costs associated with chapter 11, the Debtor believes that, by using the tools available to it under the Bankruptcy Code, it can effectuate a value-maximizing transaction through a plan of reorganization.

31. Upon the conclusion of the chapter 11 process, the Debtor expects to restructure its contractual and debt obligations, and hopefully obtain the highest recovery possible for creditor constituencies through a chapter 11 plan of reorganization. In the meantime, the Debtor

will marshal all of its resources to continue to operate its business in the ordinary course, honor its strong customer and vendor relationships and maintain its prominence in the D.C. metropolitan brewing industry.

### III.     *First Day Motions*

32.     The Debtor filed the First Day Motions concurrently with the filing of its chapter 11 petition. The Debtor requests that each of the First Day Motions be granted, as each constitutes a critical element in achieving a successful and smooth transition to chapter 11.

33.     For a more detailed description of the First Day Motions than set forth below, the Debtor respectfully refers the Court to the respective First Day Motions. To the extent that this Declaration and the provisions of any of the First Day Motions are inconsistent, the terms of the First Day Motions shall control. Capitalized terms that are used in this Part III but not otherwise defined herein shall have the meanings ascribed to them in the relevant First Day Motion.

### A.     **Debtor's Motion Requesting an Extension of Time to File Its Schedules and Statement of Financial Affairs (the "Schedules Extension Motion")**

34.     The Debtor seeks entry of an order granting additional time to file its schedules and statement of financial affairs. Due to the numerous other matters that the Debtor must attend to in connection with filing this chapter 11 case, the Debtor may not be able to complete the schedules and statement of financial affairs in the fourteen days provided under Rule 1007(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

35.     I believe that with the extension requested, the Debtor will be able to focus its attention to business operations and a smooth transition into chapter 11, which will therefore maximize the value of the Debtor's estate.

36. I believe that the relief requested in the Schedules Extension Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Schedules Extension Motion should be granted.

**B.    Debtor's Motion for Entry of an Order (i) Prohibiting Utilities from Altering, Refusing or Discontinuing Service, and (ii) Deeming Utility Companies Adequately Assured of Future Performance (the "Utilities Motion)**

37. The Debtor seeks entry of an order (a) determining that the Utilities are adequately protected within the meaning of section 366 of the Bankruptcy Code without requiring the Debtor to post security deposits with the Utilities, and (b) prohibiting the Utilities from altering, refusing or discontinuing any Utility Services on account of pre-petition date amounts outstanding.

38. Uninterrupted Utility Services are essential to the Debtor's ongoing operations. Should any Utility refuse or discontinue service, even for a brief period, the Debtor's operations could be severely disrupted. The impact of this disruption on the Debtor's day-to-day business operations and revenue would be extremely harmful and could jeopardize the value of the Debtor's assets and ability to reorganize.

39. I believe that the relief requested in the Utilities Motion is in the best interests of the Debtor's estate, its creditors and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Utilities Motion should be granted.

    **C.**    **Debtor's Motion to Assume Unexpired Lease of Nonresidential Real Property (the "Lease Assumption Motion")**

40.    The Debtor seeks entry of an order authorizing the Debtor to assume the Lease as modified upon the agreement of the Debtor and the Landlord. Assumption of the Lease is a key component of the Debtor's reorganization, inasmuch as the Lease is integral to the ongoing operations of the Debtor. The Debtor has made an enormous investment of equipment and other fixtures in the Premises and will not be able to reorganize if it is forced to relocate its operations. Moreover, the Landlord has agreed to a number of significant concessions affecting the timing and amount of rent to be paid by the Debtor while the Chapter 11 Case is pending, and these concessions materially enhance the Debtor's prospects for a successful reorganization and inure to the benefit of the Debtor's estate, its creditors and parties-in-interest.

41.    I believe that the relief requested in the Lease Assumption Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Lease Assumption Motion should be granted.

    **D.**    **Debtor's Motion for Entry of an Order Pursuant to Bankruptcy Code Sections 105(A), 361 and 363 and Bankruptcy Rules 2002 and 4001 (I) Authorizing Debtor to Use Cash Collateral, and (II) Authorizing Debtor to Provide Adequate Protection (the "Cash Collateral Motion")**

42.    The Debtor seeks entry of an order authorizing (a) the Debtor to use cash collateral; and (b) authorizing adequate protection to EagleBank. The Debtor intends to use Cash Collateral to pay vendors, pay employees, pay operating expenses, pay amounts authorized by the Court, pay costs of administration of this bankruptcy case, and continue the Debtor's restructuring efforts. The Debtor requests use of Cash Collateral in accordance with a Budge

(subject to allowed variances) to preserve the value of the Debtor's estate for the benefit of all of the Debtor's creditors, including EagleBank. As adequate protection, EagleBank shall receive a valid and perfected replacement lien on the Collateral to secure the amount of any Collateral Diminution, subject and subordinate only to valid, perfected and enforceable prepetition liens.

43. In determining the amount of liquidity needed, the Debtor has analyzed its near-term projected financial performance, including the cost it expects to incur running its business operations and preserving its business assets, while fulfilling its obligations as a debtor-in-possession in these chapter 11 proceedings. To assess its immediate funding needs, the Debtor has developed a cash flow forecast, taking into account anticipated cash receipts and disbursements. The Debtor has analyzed the impact of the bankruptcy filing and has identified potential cash outlays that would enable it to continue its ongoing operations. The Debtor has determined that its immediate liquidity needs can be met by permitting the Debtor to use the Cash Collateral. Therefore, the Debtor requests use of Cash Collateral to preserve the value of the Debtor's estate for the benefit of all of the Debtor's creditors, including, but not limited to, EagleBank.

44. I believe that the relief requested in the Cash Collateral Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to chapter 11. Accordingly, on behalf of the Debtor, I respectfully submit that the Cash Collateral Motion should be granted.

## IV. Conclusion

45.     I respectfully request that all of the relief requested in the First Day Motions, and such other further relief as may be just and proper, be granted.

46.     I, the undersigned managing member of the Debtor, declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 1, 2016

                                                                                                       Patrick Mullane
                                                                                                       Managing Member and Vice President
                                                                                                        Hellbender Brewing Company LLC

8330118-3  041587.00001